| UNITED STATES DISTRICT COURT | FOR ONLINE PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | ONLY |

------------------------------------------------------------- X
COREY ALEXANDER, :
:
                Petitioner, :
: MEMORANDUM
: AND ORDER
    - against - :
:
ROBERT ERCOLE, Superintendent, : 06-CV-3377 (JG)
Green Haven Correctional Facility, :
:
                Respondent. :
------------------------------------------------------------- X

A P P E A R A N C E S :

    COREY ALEXANDER
        03A3161
        Green Haven Correctional Facility
        P.O. Box 4000
        Stormville, NY 12582
        Petitioner, *pro se*

    CHARLES J. HYNES
        District Attorney
        Kings County
        350 Jay Street
        Brooklyn, NY 11201
    By:   Diana Villanueva
        Phyllis Mintz
        Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Corey Alexander, a prisoner incarcerated in the Green Haven Correctional Facility pursuant to a judgment of the New York State Supreme Court, Kings County, has filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. Alexander challenges his conviction following a jury trial of burglary and some lesser convictions. He is currently serving 16 years to life. By memorandum and order dated March 27, 2007, I denied Alexander's first habeas petition. Alexander now submits an amended petition seeking habeas relief on the ground that he received

ineffective assistance of appellate counsel. For the reasons set forth below, the amended petition is denied.

BACKGROUND

A.  *Offense Conduct*

The following is an overview of the facts leading up to Alexander's arrest and conviction. A more detailed recitation of the facts is set forth in my memorandum and order dated March 27, 2007, familiarity with which is assumed.

The government's evidence at trial established that from July 21, 2001 through June 2002, Alexander's encounters with Deirdre Dews, his on-again, off-again girlfriend and mother of his child, often resulted in violence. Dews testified that on July 21, 2001, Alexander entered Dews's grandmother's apartment. He pulled a gun from his waistband and tried to insert the barrel in Dews's mouth. When Dews's grandmother attempted to call the police, Alexander threatened to kill everyone in the room. The jury convicted Alexander of second degree trespass for this incident.

In November 2001, Dews and Alexander arranged to meet outside her apartment building, but Dews refused to come out. Incensed, Alexander threatened to kill her. When Dews left her apartment, Alexander startled her by jumping out from a stairwell in the apartment building. He attacked her, striking her head repeatedly until she fell to the floor. He ripped off her blouse, bit her fingers, dragged her by her skirt into her apartment, and attempted to throw the television off her terrace. For this encounter, the jury convicted him of second degree burglary.

Dews thereafter obtained an order of protection preventing Alexander from contacting her. The two, however, remained in contact, and encountered each other several more times, for which the jury convicted Alexander of two counts of second degree criminal contempt. In June 2002, Dews and Alexander inadvertently ran into each other at Dews's friend's apartment building where (coincidentally) Alexander was living at the time. In front of Dews's two young children, Alexander and Dews began to argue, resulting in Alexander pulling Dews's hair, throwing

her on a car, choking her, kicking her in the stomach, and dragging her by her hair into the building. The children implored him to stop, but to no avail. Alexander threw Dews to the floor, kicked her in the stomach and threatened to cut her face with a razor. The jury convicted Alexander of endangering the welfare of a child.

The jury acquitted Alexander of sixteen other counts relating to the alleged incidents. He was adjudicated a persistent violent felony offender under New York Penal Law § 70.08 and was sentenced to concurrent prison terms of 16 years to life for the burglary count and one year for the remaining counts.

B.  *The Procedural History*

   1.  *The Direct Appeal*

On direct appeal to the Appellate Division, Alexander argued (1) that the trial court had denied him his right to present a defense and his right to a fair trial by precluding the testimony of Lizette Zayes; (2) that the prosecution failed to prove second-degree burglary beyond a reasonable doubt and that the verdict was against the weight of the evidence; and (3) that his adjudication and sentence pursuant to the persistent violent felony offender statute violated the constitutional principles set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Appellate Division affirmed the judgment of conviction, finding that the evidence was sufficient to establish Alexander's guilt beyond a reasonable doubt, that the proffered testimony of Zayes would have been cumulative, and that the *Apprendi* claim was unpreserved for appellate review and was in any event without merit. *People v. Alexander*, 792 N.Y.S.2d 109 (2d Dep't 2005). Leave to appeal to the New York Court of Appeals was denied. *People v. Alexander*, 5 N.Y.3d 758 (2005).

   2.  *The State Post-Conviction Motions*

On June 21, 2006, Alexander petitioned the Appellate Division for a writ of error *coram nobis*, claiming ineffective assistance of appellate counsel. He argued that appellate counsel rendered ineffective assistance by failing to raise the following claims: (1) the trial court improperly

precluded a police investigative report as a business record; (2) the trial court improperly admitted the testimony of Dews regarding one of the incidents when the police investigative file relating to this incident had been lost or destroyed; and (3) the sentencing court improperly sentenced Alexander as a persistent violent felony offender because he had not been informed when he previously pleaded guilty to a violent felony in 1989 that he could face an enhanced sentence in the future. By order dated November 21, 2006, the Appellate Division rejected Alexander's claims, stating that he failed to establish that he was denied effective assistance of appellate counsel. *People v. Alexander*, 823 N.Y.S.2d 696 (2d Dep't 2006).

    3.    *The Consolidated Habeas Petition*

On July 14, 2006, Alexander filed a *pro se* petition for a writ of habeas corpus in this Court, raising the same three claims of error that he had raised on direct appeal to the Appellate Division. At the November 16, 2007 oral argument on this petition, Alexander raised several new claims, including the ineffectiveness of appellate counsel claim then pending in state court. I did not permit Alexander to amend his petition to include any new claims even if they were exhausted. Additionally, to the extent those claims were not exhausted, I declined to hold his petition in abeyance to permit exhaustion. I directed Alexander to submit his application to the Court of Appeals in the event he wished to file a successive petition based on those claims. *Alexander v. Ercole*, No. 06-CV-3377 (JG), 2007 WL 922419, at *3 n.3 (E.D.N.Y. March 27, 2007).

By memorandum and opinion dated March 27, 2007, I denied Alexander's petition, concluding that the Appellate Division's decision that the evidence was legally sufficient was neither contrary to clearly established federal law nor an unreasonable application of federal law. Furthermore, I found that the state court did not unreasonably apply federal law governing the exclusion of evidence and that the state court was not unreasonable when it found that the testimony regarding the relationship among Zayes, Alexander, and Dews was cumulative. Finally, I concluded

that while the sentencing issue was unpreserved, the state court's decision was a reasonable application of *Apprendi*. I denied a certificate of appealability. *Alexander v. Ercole*, No. 06-CV-3377 (JG), 2007 WL 922419 (E.D.N.Y. Mar. 27, 2007). On May 8, 2007, Alexander appealed my opinion and order denying his application for habeas relief.

On June 13, 2007, Alexander filed an application for permission from the Second Circuit to file a second or successive habeas petition, raising the same three arguments that he had presented before the Appellate Division in his petition for a writ of error *coram nobis*. None of these claims had been presented in his first habeas petition.

On August 21, 2007, the Second Circuit concluded that because Alexander's appeal was still pending, his new claims did not amount to a successive petition within the meaning of 28 U.S.C. § 2244. The Second Circuit consolidated the pending appeal with his application for a second habeas petition, denied the application for permission to file a successive petition as moot, and remanded the consolidated action to me. *Alexander v. Ercole*, No. 07-2086-pr (2d Cir. Aug. 21, 2007).

On September 24, 2007, Alexander filed an amended petition claiming three additional grounds for relief, the very same grounds raised in the state *coram nobis* petition. Specifically, he argues that he received ineffective assistance of appellate counsel when appellate counsel failed to raise the following arguments: (1) the trial court improperly precluded a police investigative report as a business record; (2) the trial court improperly admitted the testimony of Dews regarding one of the incidents when the police investigative file relating to the incident had been lost or destroyed; and (3) the sentencing court improperly sentenced Alexander as a persistent violent felony offender because he had not been informed when he previously pleaded guilty to a violent felony in 1989 that he could face an enhanced sentence in the future.

For the reasons set forth below, Alexander's amended petition is denied.

DISCUSSION

A.   *The Standard of Review:  AEDPA Deference*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits.  28 U.S.C. § 2254(d).  Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.*

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  *Id.*  "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'"  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

B.  *Alexander's Claim: Ineffective Assistance of Appellate Counsel*

The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Thus, to make out this type of claim, the petitioner must demonstrate both (1) that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that

7

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must be highly deferential," and the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted); *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . ."). The Supreme Court has "'declined to articulate specific guidelines for appropriate attorney conduct,' "instead emphasizing that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" *Wiggins v. Smith*, 539 U.S. 510, 521, 523 (2003) (quoting *Strickland*, 466 U.S. at 688-89), which requires "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland,* 466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome," *id.* at 694. This determination, unlike the determination whether counsel's performance was deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

1. *The Failure to Challenge the Trial Court's Refusal to Admit the Investigative Report of Detective Swantek as a Business Record.*

Alexander claims that he was denied effective assistance of appellate counsel because counsel did not raise on direct appeal the claim that the trial court improperly precluded Detective Swantek's report from being entered into evidence as a business record. This claim is

without merit. Under New York law, a police report is admissible as proof of the facts contained therein, pursuant to N.Y. C.P.L.R. § 4518(a), if "'(1) the entrant of those facts was the witness, or (2) the person giving the entrant the information was under a business duty to relate the facts to the entrant.'" *Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006) (quoting *Donohue v. Losito,* 141 A.D.2d 691, 692, 529 N.Y.S.2d 813 (2d Dep't 1988)). Thus, when the declarant is not under a duty to make a statement to the police, the police report cannot be placed into evidence under the business records exception to the hearsay rule. *People v. Maisonave*, 140 A.D.2d 545, 547 (2d Dep't 1988).

Here, Alexander argues that Detective Swantek's investigative report constituted a business record, and therefore the trial court should have received it into evidence. Trial Tr. 618-19. However, the trial court properly ruled that the investigative report was not a business record, for it consisted of the Detective's handwritten notes of Dews's statements taken on June 6, 2002, Trial Tr. 618-26, and Dews had not been under a business duty to make any statements to Swantek. *See, e.g. Lynn v. Bliden*, 443 F.3d 238 (2d Cir. 2006) ("State court did not unreasonably apply federal law on ineffective assistance of counsel, precluding federal habeas relief, by finding no prejudice from defense attorney's failure to persuade trial court to admit, under business records hearsay exception, portion of police officer's report . . .").

Because the trial court's ruling was correct, appellate counsel was not constitutionally ineffective for failing to raise the argument on appeal, and the state court's decision finding that appellate counsel rendered effective assistance of counsel was neither contrary to nor an unreasonable application of clearly established federal law.

2. *The Failure to Challenge the Trial Court's Admission of Dews's Testimony*

Alexander claims that he was denied effective assistance of appellate counsel because counsel did not argue that Dews's testimony was inadmissible in light of the fact that the Detective Jenning's investigative file had been lost or destroyed and therefore had not been provided to the defense.

9

While *People v. Rosario*, 9 N.Y.2d 286 (1961), provides that the prosecutor must disclose to the defense all recorded, pre-trial statements of the People's witnesses relating to the subject matter of their testimony, when such material is lost or destroyed, "the determination of what [sanction] is appropriate is committed to the trial court's sound discretion." *People v. Martinez*, 71 N.Y.2d 937, 940 (1988). The trial court is obliged to determine the content of missing documents as well as the circumstances of the loss or destruction. *People v. Banch*, 80 N.Y.2d 610, 616 (1992). The appropriate sanction depends on the degree of prosecutorial fault and resulting prejudice to the defendant. *Id.*

In Alexander's case, the trial court sanctioned the prosecution for the loss or destruction of the Detective Jennings' investigative report of the July 21, 2001 incident by giving the jury an adverse inference charge.[1] Jury Sel. Tr. 19; Trial Tr. 668-72. When *Rosario* material is lost or destroyed, such a charge qualifies as a proper sanction. *Martinez*, 71 N.Y.2d at 940; *see also People v. Maddix*, 244 A.D.2d 432, 432 (1997) (the trial court "did not improvidently exercise its discretion in giving an adverse inference charge" as a sanction for the lost *Rosario* material). The trial court heard arguments from both the prosecution and the defense as to the degree of prosecutorial fault and the resulting prejudice caused by the lost or destroyed report. Jury Sel. Tr. 13-19. After considering these arguments, the trial court properly concluded that an adverse inference charge was the appropriate sanction. Appellate counsel's failure to raise this claim on appeal does not amount to ineffective assistance of appellate counsel, and therefore the *coram nobis* court's denial of this claim was neither unreasonable nor contrary to clearly established federal law.

---

[1] The adverse inference charge was as follows:

> During the course of the trial you heard testimony of a police officer's file of a Detective Jennings which the people have been unable to produce in court as an exhibit because it is missing. As a result of the missing file, you may infer that the file contained information adverse to the People's case.

Trial Tr. 824-25.

3. *The Failure to Challenge the Sentencing of Alexander as a Persistent Violent Felony Offender*

Alexander claims that counsel was ineffective in failing to raise on appeal the claim that the trial court improperly sentenced him as a persistent violent felony offender. Alexander contends that when he pleaded guilty to a violent felony on December 28, 1989, he was not informed that he could face an enhanced sentence if convicted of a violent felony in the future. However, there is no requirement that a defendant be informed upon pleading guilty that his conviction or sentence could enhance his sentence in a future case. *See, e.g., United States v. Salerno*, 66 F.3d 544, 550-55 (2d Cir. 1995); *People v. McGrath*, 43 N.Y.2d 803, 804 (1977); *People v. Shivers*, 297 A.D.2d 584, 584 (1st Dep't 2002); *People v. Boyle*, 111 A.2d 826, 827 (2d Dep't 1985) ("[I]t was not necessary for the defendant to be expressly advised at the time of his prior guilty plea that the conviction would provide a predicate for a more severe sentence should he commit another felony."). Alexander's counsel was therefore not ineffective in failing to raise this claim on appeal.

CONCLUSION

For the foregoing reasons, the amended petition is denied. As Alexander has again failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 11, 2008
Brooklyn, New York